UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| ERIC MELOY, | ) | Case No. 5:15-CV-01123 |
|---|---|---|
| Plaintiffs, | ) ) ) ) | |
| vs. | ) | JUDGE JOHN R. ADAMS |
| AKRON POLICE DEPARTMENT, et al., | ) ) ) | |
| Defendants. | ) ) ) | **MEMORANDUM OPINION AND ORDER** |

This matter is before the Court on the motion for summary judgment of Defendants Akron Police Chief James Nice, Officers Matthew Beech and Shawn Chetto, and the City of Akron (collectively, "Defendants"). Plaintiff Eric Meloy has opposed the motion. For the reasons that follow, Defendants' motion for summary judgment (Doc. #39) is GRANTED.

Also before the Court is Defendants' motion to strike Mr. Meloy's expert affidavit attached to Mr. Meloy's response to the motion for summary judgment. The motion to strike (Doc. #45) is DENIED AS MOOT.

I. **FACTS**

Officers Beech and Chetto arrested Mr. Meloy at his home in Akron after Mr. Meloy had a confrontation with his neighbors, the Youngs. The Youngs rented the house next door to Mr. Meloy from Mr. Meloy's mother. Prior to the confrontation with the Youngs, Mr. Meloy returned from work and went drinking at a bar for three hours. He returned home at about 9:00 p.m., ate a sandwich, and drank another five or six beers. Now "definitely buzzed," Mr. Meloy went next door "raising hell" with the Youngs about unpaid rent and other issues. (Doc. #39-1,

1

Meloy Dep. p. 57, 68.) He argued with the Youngs on their front porch, kicked the door open, and knocked their mailbox off the porch. The Youngs called the police. Mr. Meloy realized he "screwed up" and "went home and was basically sitting there waiting for the police." (*Id*. p. 61.)

While waiting for the police, Mr. Meloy removed his pants. When the police arrived he "stepped out on the porch * * * in [his] underwear only." (*Id.* p. 65.) The officers arrested Mr. Meloy and cuffed him with his hands behind his back. Mr. Meloy's cousin, Robert Schuster, helped Mr. Meloy put on some pants after he was cuffed, but could not zip or snap them.

Officer Chetto walked Mr. Meloy from the porch down the front walk to the waiting police cruiser. Officer Beech did not help escort Mr. Meloy, but rather remained at the cruiser completing a report. Officer Chetto escorted Mr. Meloy with his right hand on Mr. Meloy's left bicep. While they walked, Mr. Meloy's pants continued to fall down at least to mid-thigh. Officer Chetto described Mr. Meloy as "highly intoxicated." (Doc. #39-10, Chetto Dep. p. 25.) Mr. Meloy testified that Officer Chetto kept him from falling more than once.

Mr. Meloy fell during the walk to the cruiser. Mr. Meloy contends that officer Chetto "shoved" him and he fell forward onto the sidewalk. (Doc. #39-1, Meloy Dep. p. 77.) Yet, Mr. Meloy cannot personally recall the shove because his memory is "fuzzy" after the incident. (*Id.* p. 77, 81.) Instead, Mr. Meloy defers to Mr. Schuster's account of the shove. Mr. Meloy testified:

> Q. Did you get a sense that it was an intentional shove by the officer?
>
> A. Yes.
>
> Q. Why do you say that?
>
> A. After talking about it with my cousin, he eye witnessed it, and he said, man, he shoved you. He said something, [w]atch this, and he shoved you. And we talked and talked and talked and talked, and there's no doubt. I don't think it was two-handed.

2

> Q. Was it just one shove that caused you to fall to the ground? One single shove?
>
> A. Yes. Yes.

(*Id.* p. 78.)

Mr. Schuster described Officer Chetto's action as a single "push" with the right hand the officer had on Mr. Meloy's left bicep. (Doc. #39-9, Schuster Dep. p. 26.) According to Mr. Schuster, Officer Chetto did not remove his hand from Mr. Meloy's arm, but rather kept his hand in place and pulled down on Mr. Meloy's arm. Mr. Schuster testified:

> Q. So you're looking down – envisioning the officer walking – and was Mr. Meloy walking in front of him?
>
> A. Yeah.
>
> Q. So what did you see? Could you see the back of the officer at that point?
>
> A. Yeah.
>
> Q. And Mr. Meloy, at that point, was walking in front of the officer; is that correct?
>
> A. Yeah.
>
> Q. And you used the term "push"?
>
> A. Push.
>
> Q. What did you see? Describe what you saw?
>
> A. Just a push, and then he had gone down –
>
> Q. Okay.
>
> A. – on his face.
>
> Q. You're using your right arm, you saw the – you saw the police officer do something with his right arm?

3

> A. Yeah.
>
> * * *
>
> Q. When you describe for me a push or a shove, if an officer – if you can follow me on this – if an officer has a hold of a person's arm and he's escorting him, when you saw – the moment that you saw a shove or a push, did you see the officer take his hand off and shove or –
>
> A. It was down. He didn't take his hands off, he just, down.

(*Id.* p. 26-28, 41.)

Mr. Schuster later testified that Officer Chetto did not intend to force Mr. Meloy to the ground, but instead was trying to hurry Mr. Meloy along to the cruiser. Mr. Schuster testified:

> Q. Mr. Schuster, when you described for me earlier in your testimony about the police officer and a push, which arm was the police officer using at the moment of the push?
>
> A. The right.
>
> Q. And it was just – it was a push with just the right arm, correct? It wasn't a push with – what I'm trying to gather is, it wasn't a push with both hands?
>
> A. I just saw one arm.
>
> Q. Okay. At the moment that Mr. Meloy's pants and fallen down and you came over to help him pull it up, I mean, what was the officer's demeanor at that point? Was he upset this was going on?
>
> A. I think –
>
> Q. Or did you notice any change in his demeanor?
>
> A. I think he just wanted to get [Mr. Meloy] in the car and go.
>
> Q. Yeah. And when you say that, then I'm left with at least a fair impression that he just wanted Eric to get in the car and go, he didn't necessarily want to push him to the ground?

4

> [Objection.]
>
> Q. Is that correct? Go ahead. Do you have an opinion?
>
> A. Like I said, I just think he just wanted to get him in there.
>
> Q. Just to get him in the car?
>
> A. Yeah.

(*Id.* at 44-45.)

Officer Chetto denies pushing Mr. Meloy to the ground. Officer Chetto and Officer Beech testified that Mr. Meloy stated that he was going to fall down before he fell.

After the fall, Mr. Meloy was examined by paramedics. He was then transported and booked into jail. Mr. Meloy was released the next day, a Saturday. The following day, a Sunday, he attended his son's wedding. On Monday, Mr. Meloy went to a hospital. It appears that he suffered multiple facial fractures from the fall.

Mr. Meloy filed a first amended complaint in the instant lawsuit, alleging that the officers' actions constitute an unlawful seizure of his person and excessive force in violation of his federal constitutional rights. In addition, Mr. Meloy alleges race discrimination. He also asserts municipal liability against the City of Akron and Police Chief Nice, who is sued is his official capacity. He further claims that the officers' conduct constitutes assault and battery, negligence, and gross negligence under Ohio law.

Defendants filed a motion for summary judgment on all claims, arguing in part with respect to Mr. Meloy's constitutional claims that the officers are entitled to qualified immunity from liability. Mr. Meloy opposed the summary judgment motion. In turn, Defendants moved to strike the proposed expert affidavit attached to Mr. Meloy's opposition to summary judgment. For the reasons explained below, summary judgment is GRANTED to Defendants. Defendants'

motion to strike Mr. Meloy's proposed expert affidavit is DENIED AS MOOT.

I. **LEGAL STANDARD**

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law * * *.

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941, 943–944 (6th Cir. 1990).

A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–1480 (6th Cir. 1989) (citing *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus,* 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

## II. LAW AND ANALYSIS

### A. Qualified Immunity

As an initial matter, Mr. Meloy admits that Officer Beech did not participate in the events that led to Mr. Meloy's fall and injuries, and thus is entitled to qualified immunity from suit. Now this Court must decide whether Officer Chetto also is entitled to qualified immunity.

Qualified immunity shields government officials from civil liability in the performance of their duties so long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Such immunity "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)). "Qualified immunity strikes a balance between compensating those who have been injured by official conduct and protecting [the] government's ability to perform its traditional functions." *Wyatt v. Cole*, 504 U.S. 158, 168 (1992).

Qualified immunity will ordinarily apply unless it is obvious that a reasonably competent official would have concluded that the actions taken were unlawful. *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002). The qualified immunity analysis is a two-step inquiry: (1) whether a constitutional right has been violated; and (2) whether that right was clearly established, though the steps need not be taken in that order. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Mr. Meloy argues that when Officer Chetto pushed him, the officer violated Mr. Meloy's Fourth Amendment right to be free of excessive force during arrest. The Sixth Circuit applies the Fourth Amendment's unreasonable seizure jurisprudence when analyzing such claims.

7

*Morrison v. Bd. of Trustees of Green Tp.*, 583 F.3d 394, 400 (6th Cir. 2009). Whether an officer has exerted excessive force during the course of a seizure is determined under an "objective reasonableness" standard. *Morrison*, 583 F.3d at 401 (citing *Graham v. Connor*, 490 U.S. 386, 396-397 (1989)). Thus, such qualified immunity claims must be analyzed on a fact-specific, case-by-case basis to determine whether a reasonable official in the defendant's position could have believed that his conduct was lawful, in light of clearly-established law and the information he possessed. *Pray v. Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995). The contours of the right alleged to have been violated must be sufficiently clear such that a reasonable official would understand that what he is doing violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "[If] officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley*, 475 U.S. at 341. Thus, even if the official's conduct is ultimately proved legally wrong, he still would be entitled to immunity as long as his decision was objectively reasonable. *Pray*, 49 F.3d at 1158.

Qualified immunity provides immunity not only from liability, but also from trial. Whether qualified immunity is available is a question of law. *Cook v. Cincinnati*, 103 Ohio App. 3d 80, 85 (1st Dist. 1995). Therefore, whether a public official did or did not act reasonably under a specific set of facts is a matter for the court and may properly be determined by summary judgment. *Cook*, 103 Ohio App. 3d at 85. Thus, while a court must consider the facts in the light most favorable to the nonmoving plaintiff, the court – not the jury – must determine as a matter of law whether the facts show that the defendant violated clearly-established rights of which a reasonably officer would have known. *See Poe v. Haydon*, 853 F.2d 418, 425 (6th Cir. 1988).

Moreover, even on summary judgment, the ultimate burden of proof is on the plaintiff to

show that the defendant is not entitled to qualified immunity. *Cook*, 103 Ohio App. 3d at 85. A court must therefore grant summary judgment for the defendants if the undisputed facts, and any disputed facts viewed in the plaintiff's favor, fail to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct. *Id*. at 86.

Given these basic principles of qualified immunity, this Court must decide whether Mr. Meloy has met his burden to demonstrate that Officer Chetto's push violated a clearly-established right of which a reasonable officer would have known. Even construing the evidence in a light most favorable to Mr. Meloy, he has not met this burden.

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (internal quotation and citation omitted). Indeed, a shove by police for the legitimate purpose of guiding a suspect to a police cruiser may be permissible force under the particular facts and circumstances of the case. *See Buxton v. Nolte*, 473 F. Supp. 2d 802, 813 (S.D. Ohio 2007). In *Buxton*, a plaintiff claimed excessive force after a police officer purportedly shoved him while escorting him to a police cruiser, causing him to fall and break his hand. Based on several factors, the district court found that the officer's use of force was objectively reasonable such that qualified immunity would apply. First, the court noted that the plaintiff did not allege that the officer violently shoved him, but rather shoved him to move him toward the police car. *Buxton*, 475 F. Supp. 2d at 813. Second, the shove was not a "gratuitous blow with either [the officer's] person or any sort of weapon[.]" *Id.* Third, the plaintiff admitted that "the force was for the legitimate purpose of guiding [the plaintiff], rather than malicious." *Id.* Further, the court found that it was reasonable for the police officer to maintain control over the plaintiff "to assist

9

him in maintaining his balance" when there was ice and snow on the ground. *Id.* Under these facts, the court concluded that "[e]ven if [the officer's] use of force in guiding [the plaintiff] was not entirely necessary, it does not rise to the level of excessive force necessary for a violation of the Fourth Amendment." *Id.*

The facts of this case are similar to those in *Buxton*. As in *Buxton*, it was not objectively unreasonable for Officer Chetto to maintain control over Mr. Meloy given Mr. Meloy's state of intoxication and difficulty walking due to his pants falling down. Further, like in *Buxton*, the evidence shows that Officer Chetto's shove or push was for the legitimate purpose of guiding Mr. Meloy to the police car. Here, Mr. Meloy could not independently recall the facts surrounding the push that led to his fall, but instead testified that his recall was dependent upon details supplied by his cousin, Mr. Schuster. Accordingly, this Court's qualified immunity analysis must rely on the testimony of Mr. Schuster. Mr. Schuster testified that Officer Chetto was not acting maliciously when he pushed Mr. Meloy, but rather the officer "just wanted to get [Mr. Meloy] in [the car]." As explained above, Mr. Schuster testified:

> Q. Mr. Schuster, when you described for me earlier in your testimony about the police officer and a push, which arm was the police officer using at the moment of the push?
>
> A. The right.
>
> Q. And it was just – it was a push with just the right arm, correct? It wasn't a push with – what I'm trying to gather is, it wasn't a push with both hands?
>
> A. I just saw one arm.
>
> Q. Okay. At the moment that Mr. Meloy's pants and fallen down and you came over to help him pull it up, I mean, what was the officer's demeanor at that point? Was he upset this was going on?
>
> A. I think –

10

| | Q. | Or did you notice any change in his demeanor? |
|---|---|---|
| | A. | I think he just wanted to get [Mr. Meloy] in the car and go. |
| | Q. | Yeah. And when you say that, then I'm left with at least a fair impression that he just wanted Eric to get in the car and go, he didn't necessarily want to push him to the ground? |

[Objection.]

| | Q. | Is that correct? Go ahead. Do you have an opinion? |
|---|---|---|
| | A. | Like I said, I just think he wanted to get him in there. |
| | Q. | Just to get him in the car? |
| | A. | Yeah. |

(Doc. #39-9, Schuster Dep. p. 44-45.)

Mr. Meloy argues that it is not accurate to interpret Mr. Schuster's testimony to mean that Officer Chetto acted simply to "get [Mr. Meloy] in [the car]." Mr. Meloy's argument is not well-taken, because that is precisely Mr. Schuster's deposition testimony. Moreover, like in *Buxton*, there is no further testimony or other evidence that the officer's push was gratuitous or for the purpose of taking Mr. Meloy to the ground. Mr. Meloy testified that Mr. Schuster told him that Officer Chetto said "watch this" before Mr. Meloy fell, but Mr. Meloy admitted to a "fuzzy" memory and that he relied upon details supplied by Mr. Schuster to reconstruct the events leading up to his fall. There is no further testimony or other evidence regarding the significance of Officer Chetto's comment. Moreover, there is no evidence that Officer Chetto exhibited racial animus or that the push was a result of such animus, as Mr. Meloy appears to allege in his amended complaint.

Even viewing the facts in a light most favorable to Mr. Meloy, including Mr. Schuster's vague description of the push as "just [] down," Mr. Meloy has not met his burden to show that the push constituted excessive force that would violate a clearly established constitutional right.

Like the court in *Buxton*, this Court must conclude that "[e]ven if [the officer's] use of force in guiding [the suspect] was not entirely necessary, it does not rise to the level of excessive force necessary for a violation of the Fourth Amendment." *Buxton*, 473 F. Supp. 2d at 813.

The affidavit of Mr. Meloy's proposed expert, emergency room physician Dr. Samuel J. Kiehl, does not alter the Court's conclusion. Dr. Kiehl, who apparently did not examine or treat Mr. Meloy, opined that Mr. Meloy's fall and facial injuries "were caused by a push or by tripping when moving forward too quickly with [] restraints." Even when Dr. Kiehl's opinion is regarded as true, it does not establish that the push or any action of the officer was objectively unreasonable under the facts and circumstances of this case. In addition, the Court notes that Dr. Kiehl's statements regarding appropriate police procedure during the arrest are improper, as there has been no foundation laid to establish Dr. Kiehl's expertise in such matters.

Because Mr. Meloy has not met his burden to show that Officer Chetto used excessive force in violation of Mr. Meloy's Fourth Amendment rights, qualified immunity shields the officer from liability. Officer Chetto is thus entitled to summary judgment on Mr. Meloy's constitutional claims.

Moreover, even if Officer Chetto's actions were objectively unreasonable, which they were not under the facts present here, they did not involve "'clearly established constitutional rights of which a reasonable person would have known.'" *Hoover v. Radabaugh*, 307 F.3d 460, 465 (6th Cir. 2002) (citing *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir.1996)). Thus, Officer Chetto is also protected by qualified immunity because the unlawfulness of his conduct was not apparent. *See Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Wegner v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

Mr. Meloy cites two cases finding that police officers used excessive force. However, these cases are distinguishable from the facts of this matter and therefore do not clearly establish that Officer Chetto's conduct was objectively unreasonable.

In one case cited by Mr. Meloy, *Vance v. Wade*, 546 F.3d 774 (6th Cir. 2008), a police department executed search warrants for gambling machines at various locations. During the execution of one search warrant, the plaintiff was placed in handcuffs and ultimately escorted to the police cruiser. The court affirmed summary judgment in favor of the officer on the plaintiff's excessive force handcuffing claim, but found a question of material fact as to whether the officer used excessive force in cramming the plaintiff's head down on his shoulder and shoving him face first into the floorboard of the patrol car's back seat. In finding an issue of material fact as to whether the use of force was reasonable, the Sixth Circuit found crucial a "time delay between [the officer] escorting [the plaintiff] to the car and [the officer's] later actions in cramming [the plaintiff] into [the] car * * * well after securing [the plaintiff] and diffusing the situation." *Vance*, 546 F.3d at 785. The Sixth Circuit reasoned that qualified immunity would more likely have applied if the officer had "simply escorted [the plaintiff] to the car and proceeded immediately to shove [the plaintiff] into the car and cram him into the floorboard." *Id.*

In *Burden v. Carroll*, 108 Fed. Appx. 291 (6th Cir. 2004), the second case cited by Mr. Meloy, a police officer responded to a suspicious persons call involving the plaintiff and another person who were soliciting business for their employer in a neighborhood. The plaintiff had been involved in a verbal exchange with a neighborhood resident. After the exchange, the plaintiff stopped trying to solicit customers in the neighborhood and sat down on a curb to wait for his ride. When the police officer in question arrived, the officer accused the plaintiff of threatening the neighborhood resident. The officer and the plaintiff proceeded to engage in a heated verbal

exchange. After a time the officer forcibly pushed the plaintiff back a couple of feet and slammed him into a wall. *Burden*, 108 Fed. Appx. at 292. The Sixth Circuit found that the officer's use of force "later in the encounter" after plenty of time to secure and analyze the scene was unreasonable and precluded qualified immunity. *Id.* at 293.

The denial of qualified immunity in both *Vance* and *Burden* centers around a significant time delay between the initial interaction between the officers and plaintiffs and a later application of substantial force. These are not the facts of this case. In this case, Officer Chetto's push occurred during the process of escorting an intoxicated Mr. Meloy, whose pants were falling down, to the police car. Mr. Meloy has not alleged a time delay between the officer's attempt to get him to the police car and the action giving rise to his excessive force claim. Thus, the cases cited by Mr. Meloy in support of his excessive force claim do not define the "contours of the right" in a manner that is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. On the other hand, as discussed above, *Buxton* held that an officer's shove or push for the legitimate purpose of guiding a suspect to a police car is not unreasonable under facts similar to those present here. *Buxton*, 473 F. Supp. At 813. It is Mr. Meloy's burden to show that clearly established law existed to put Officer Chetto on notice that his conduct was unlawful. *See Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (the burden of convincing the court that the law was clearly established rests with the plaintiff). Mr. Meloy had not met this burden. Accordingly, this case falls into the sometimes "'hazy border between excessive and acceptable force'" where qualified immunity operates to protect an officer from liability for acts that were not clearly unlawful. *See Buxton*, 473 F. Supp. 2d at 811-812 (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).

For the reasons discussed, qualified immunity protects Officer Chetto from liability for Mr. Meloy's constitutional claims. Accordingly, summary judgment for the officer is appropriate on these claims.

### B. Municipal Liability

Turning now to Mr. Meloy's claims against the City of Akron and Akron Police Chief Nice, the Court recognizes that municipalities may be liable for damages under 42 U.S.C. § 1983 when a deprivation of federal rights results specifically from a city policy or custom. *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658 (1978). Initially, Mr. Meloy's municipal liability claims fail because he does not identify, beyond mere generalities, any specific policy or custom of the City of Akron that allegedly caused him to suffer a constitutional deprivation. Separately, his municipal liability claims fail because, as discussed above, Mr. Meloy cannot prove an underlying constitutional violation by the individual police officers. "If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that [municipal] regulations might have *authorized* the use of constitutionally excessive force is quite beside the point." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1996). Accordingly, summary judgment is awarded to the City of Akron and Police Chief Nice on these claims.

Moreover, Mr. Meloy's claim for punitive damages against the City of Akron must be denied as a matter of law. Under R.C. 2744.05(A), punitive damages may not be awarded against a municipality. Common law also precludes any award of punitive damages against the city. *Newport v. Facts Concerts, Inc.*, 435 U.S. 247 (1981). Even if Mr. Meloy succeeded on any claims against the city, his punitive damages claim is foreclosed as a matter of law.

### C. Ohio Tort Claims

Mr. Meloy brings claims under Ohio law for assault and battery, negligence, and gross negligence. Defendants argue that they are immune from liability under R.C. 2744.03(A)(6). This Court agrees.

Turning to Mr. Meloy's claims of assault and battery, "an assault in tort is the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact." *Vandiver v. Morgan Adhesive Co.,* 126 Ohio App.3d 634, 710 (9th Dist. 1998) (citation and internal quotation omitted). Similar to, but distinguishable from, a civil assault is civil battery, which goes one step beyond civil assault, and includes "an intentional, nonconsensual touching." *Watkins v. Cleveland Clinic Found.,* 130 Ohio App.3d 262, 279 (8th Dist. 1998). When a person engaged in this sort of behavior is a police officer acting in his official capacity, as Officer Chetto was undisputedly doing here, R.C. 2744.03(A)(6) provides that the police officer is privileged to make such contact as may be necessary to properly execute his duties and is, thus, protected by governmental immunity, unless the plaintiff can show that the officer acted "with malicious purpose, in bad faith, or in a wanton and reckless manner." *See* R.C. 2744.03(A)(6)(b); *Hale v. Vance,* 267 F.Supp.2d 725, 736 (S.D. Ohio 2003).

Whether conduct is wanton or reckless typically is a jury question. *Fabrey v. McDonald Vill. Police Dept.*, 70 Ohio St.3d 351, 356 (1994); *Hunt v. City of Toledo Law Dept.*, 881 F. Supp. 2d 854, 884 (N.D. Ohio 2012). Nonetheless, the Court is "bound to consider the threshold question, which is whether there is a genuine dispute of material fact as to whether [d]efendant police officers used inappropriate force in controlling and/or arresting [p]laintiffs or otherwise acted manifestly outside the scope of their employment or official responsibilities or acted with

malicious purpose, in bad faith, or in a wanton and reckless manner and thereby committed assault and battery." *Hunt*, 881 F. Supp. 2d at 884-885. This Court, having reviewed the facts in a light most favorable to Mr. Meloy, has already answered this question in the negative for the reasons discussed above. For the reasons previously stated, Mr. Meloy failed to meet his burden to show that Officer Chetto acted unreasonably under the circumstances. Thus, Mr. Meloy cannot show that Officer Chetto's actions were motivated by malice or bad faith, or that they were wanton or reckless. Accordingly, Mr. Meloy's assault and battery claims against Officer Chetto are precluded by R.C. 2744.03(A)(6)(b).

Mr. Meloy's negligence and gross negligence claims also fail as a matter of law. As discussed, to overcome the immunity provided by R.C. 2744.03(A)(6)(b), the officer's acts or omissions in question must have been committed with malicious purpose, in bad faith, or in a wanton or reckless manner. Thus, even if proven, negligent conduct is insufficient "to remove the cloak of immunity under state law." *Radvansky v. City of Olmsted* Falls, 395 F.3d 291, 316 (6th Cir. 2005). For this reason, summary judgment is warranted on Mr. Meloy's Ohio law negligence claims.

This Court finds that Officer Chetto is immune from Mr. Meloy's Ohio law tort claims under R.C. 2744.03(A)(6)(b). Summary judgment is granted to Defendants on these claims.

## III. CONCLUSION

For the reasons set forth herein, Defendants' motion for summary judgment (Doc. #39) is GRANTED in its entirety.  Defendants' motion to strike (Doc. #45) is DENIED AS MOOT.

**IT IS SO ORDERED.**

 s/John R. Adams_____
JOHN R. ADAMS
UNITED STATES DISTRICT JUDGE

**DATED**: April 18, 2017